NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| GABRIELLA TATUM and JAMIE MEYER, on behalf of themselves and all others similarly situated | : : : : | |
| Plaintiff, | : : | |
| v. | : : : | **Hon. Dennis M. Cavanaugh** |
| CHRYSLER GROUP LLC. | : : | **OPINION** |
| Defendant. | : : : | Civil Action. No.10-cv-4269(DMC)(JAD) |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion by Chrysler Group, LLC 's("Defendant") motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Pursuant to Fed. R. Civ. P. 78, no oral argument was heard. For the reasons contained herein, Defendant's motion to dismiss is **denied** in part and **granted** in part**.**

## I.      BACKGROUND

The named Plaintiffs, representing a class of people who purchased Chyrsler LLC's Dodge Journey cross-over vehicle after March, 2008, allege that the car's braking system was inherently flawed because the brake pads and rotors are too small and thin to handle the braking duties required by the size and weight of the Journey. Plaintiff's allege that the brakes on their Journeys required expensive and frequent repairs that they did not anticipate. Plaintiff's allege that they were induced to buy the class vehicle by Defendant's advertisements, which touted the Journey as safe, durable and reliable, and indicated that it could be driven to Peru or Rio de

Janeiro. Plaintiff maintains that Defendant was, or should have been, aware of this defect, and should have notified consumers of it prior to their purchase of the car. Defendant maintains that the braking system was not defective, that the brakes routinely outlasted their sales warranty, and that the advertising was not intended to create a literal representation, but was merely puffery. Plaintiff's invoke the New Jersey Consumer Fraud Act, as well as a comparable California statute, the Unfair Competition Law. Plaintiff's also allege violations of the Magnuson-Moss Act, 15 U.S.C. 2301, as well as California's Legal Remedies Act, and a breach of express warranty.

## II.   LEGAL STANDARD

   A. Fed. R. Civ. P. 12(b)(6)

"The [d]istrict [c]ourt, in deciding a motion under Fed. R. Civ. P. 12(b)(6), [is] required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [Plaintiff]." Phillips v. County of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008).   "While a complaint attacked  by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [ ] a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly,  550 U.S. 544, 555 (2007).  "[A court is] not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).   "Factual allegations must be enough to raise a right to relief above a speculative level, [ ] on the assumption that all factual allegations in the complaint are true (even if doubtful in fact)." Bell at 555-56. The Complaint must set forth direct or inferential allegations respecting all the material elements necessary to sustain recovery

2

under some viable legal theory. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 562, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). That said, something more than a mere *possibility* of a claim must be alleged; the plaintiff must allege "enough facts to state a claim for relief that is plausible on its face." *Id* at 570.

    B. Fed. R. Civ. P.9(b)

Under Federal Rule of Civil Procedure 9(b) all averments of fraud must be stated with particularity. "Rule 9(b)'s heightened pleading standard gives defendants notice of the claims against them, provides an increased measure of protection for their reputations, and reduces the number of frivolous suits brought solely to extract settlements." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1418 (3d Cir.1997) (citations omitted). Rule 9(b) can be satisfied by describing the circumstances of the alleged fraud with precise allegations of date, time, or place, or by using some means of injecting precision and some measure of substantiation into the fraud allegations. *Board of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.,* 296 F.3d 164, 173 n. 10 (3d Cir.2002).

## III.   **DISCUSSION**

Defendant asks the Court to dismiss this complaint based on seven discrete grounds that the Court will address in turn.

Defendant's first argument is that Chrysler LLC. came into existence as the result of an asset purchase agreement between "Old Carco." and Chrysler, and that pursuant to that agreement Chrysler cannot be held liable for obligations that existed prior to the bankruptcy reorganization that created Chrysler as it is presently constituted. If Defendant were correct about the lack of Chrysler's successor liability, its motion to dismiss would have to have been granted.

3

Courts traditionally adopt a four-pronged approach to determine whether successor liability applies to an asset purchase agreement. The general rule is "well-established that where one company sells or otherwise transfers all of its assets to another company, the transferee of those assets is not ordinarily liable for the debts of the transferor company, including those arising out of the transferor's tortious conduct." *Ramirez v. Amsted Industries, Inc.,* 86 *N.J.* 332, 340, 431 *A.*2d 811 (1981) (citations omitted). As elaborated on in *Woodrick v. Jack J. Burke Real Estate, Inc.* 306 N.J.Super. 61, 72-73, 703 A.2d 306, 312 (N.J.Super.A.D.,1997), however, "under this traditional approach, four well-established exceptions exist: where (1) the purchasing corporation expressly or impliedly agrees to assume such debts and liabilities; (2) the transaction amounts to a consolidation or merger of the seller and purchaser; (3) the purchasing corporation is merely a continuation of the selling corporation; or (4) the transaction is entered into fraudulently in order to escape responsibility for such debts and liabilities"

In the instant case, it is doubtful that the purchasing corporation expressly agreed to assume the liabilities that give rise to this law suit. Although the Court does not have the Master Sales Agreement as an exhibit, neither party asserts that there is explicit language about successor liability for the claim. Whether they impliedly assumed debts and responsibilities such as the brake repairs at issue is an open question that the Court can not determine at this stage of the litigation. The second prong, whether the transaction is a consolidation or a merger, seems on the face of it, not to apply to the facts, although that is based solely on the limited documents the Court has been provided with. The third prong of the analysis, however, strongly suggests that there may be successor liability based on a continuation theory. As the court held in *U.S. v. Chrysler Corp.* 1990 WL 127160, 5 (D.Del.) (D.Del.,1990), "the standards for application of the

4

continuation theory of corporate successor liability are not entirely clear. *See Oman International Finance Ltd. v. Hoiyong Gems Corp.,* 616 F.Supp. 351, 361 (D.R.I.1985) (noting that each case is inherently different and few bright lines can be drawn). There are common factors that courts have consistently relied upon, and these have included common identity of ownership and control such as common stockholders and directors, common officers, adherence to common business plans, and sameness of product lines." *See, e.g., Tucker v. Paxson Machine Co.,* 645 F.2d 620, 625-26 (8th Cir.1981); *Michigan v. Thomas Solvent Co.,* 725 F.Supp. 1446, 1458 (W.D.Mich.1988); *United States v. Vertac Chemical Corp.,* 671 F.Supp. 595, 614-15 (E.D.Ark.1987), *vacated and remanded on other grounds,* 855 F.2d 856 (8th Cir.1988). In applying those factors to the case at bar, it is clear that, at very least, the product lines remained virtually unchanged. Again, whether that is sufficient to establish successor liability is a matter to be determined at a later stage based on a totality of the circumstances, and the factors as mentioned. The Court notes, however, that in *In re: Old Carco LLC f/k/a Chrysler LLC et al*., a case that Defendants rely on, is fact specific to the assumption of obligations arising from lemon law claims and other similar cases are fact specific to the assumption of executory contracts with dealerships, neither of which Chrysler was found to have successor liability for. While it may well be true that the present case falls under the same rubric, and that the bankruptcy court's holding that Chrysler LLC "does not become a successor to Old Carco," and that "all non-assumed Old Carco claims are barred against new Chrysler," this Court is reluctant to make that finding without a more developed factual record. (P.5)

Defendant's second argument, that the complaint alleges nothing more than disappointed consumer expectations, may well turn out to be correct, but once again, it is a question better

suited to a factually developed record.  The Court is struck, however,  by the apparent fact that

none of the cars detailed in the complaint save for one seem to have suffered brake failure until

after the one year or 12,000 mile sales warranty had expired. None of the quotes from the internet

websites aver brake problems within the warranty period. Only with regard to Plaintiff Tatum's

vehicle is there any allegation that it experienced problems within the covered period and that

Defendant refused to pay for the needed repairs.[1]  This is a matter of critical and dispositive

importance, but it is premature for the Court to decide on this record, other than to note that if the

sales warranty covered the Journey's brakes up to 12,000 miles, and the brakes routinely failed at

12,001 miles, Chrysler or its successor would have had no obligation to repair them. Moreover,

there would have been no undisclosed defect that Chrysler or its successor had an obligation to

alert  consumers to. The Second Circuit explained this in *Abraham v. Volkswagen of America,*

*Inc.* 795 F.2d 238, 250 (C.A.2 (N.Y.),1986), stating that "the general rule is that an express

warranty does not cover repairs made after the applicable time or mileage periods have elapsed."

The *Abraham* Court concluded   "virtually all product failures discovered in automobiles after

expiration of the warranty can be attributed to a 'latent defect' that existed at the time of sale or

during the term of the warranty. All parts will wear out sooner or later and thus have a limited

effective life. Manufacturers always have knowledge regarding the effective life of particular

parts and the likelihood of their failing within a particular period of time. Such knowledge is

easily demonstrated by the fact that manufacturers must predict rates of failure of particular parts

---

[1]Plaintiff Meyer's brakes failed "just twelve months after purchase, and less than 12,800 miles." (ECF Doc.1, page ID 8, Complaint, ¶ 20). The Court finds that Count IV, breach of written warranty, is dismissed with regard to this plaintiff. She and Plaintiff Tatum are not similarly situated as to the alleged violation of 15 U.S.C. 2301(3).

in order to price warranties and thus can always be said to 'know' that many parts will fail after the warranty period has expired. A rule that would make failure of a part actionable based on such 'knowledge' would render meaningless time/mileage limitations in warranty coverage." This authority was cited approvingly by the Third Circuit in *Duquesne Light Co. v. Westinghouse Elec. Corp.* 66 F. 3d 604, 616 (C.A.3 (Pa.),1995) , noting that "latent defects discovered after the term of the warranty are not actionable. " Planned obsolescence, either deliberately or accidentally engineered, is not actionable, and if the brakes outlasted their sales warranty even by a day or a mile, there would be nothing rising to the level of a design flaw for Defendants to warn of. The Court notes that this may be  particularly true of braking systems, where the life of the brakes depends on many factors including where one drives and how often one stops, and not only how far one drives. As a matter of law, if the brakes in these vehicles did not fail until after the expiration of their sales warranties, there would be nothing on which Plaintiff could rely to allege "a fundamental and dangerous design defect," (ECF Doc. 9, page ID 117, Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss) and the fact that other vehicles of comparable size and weight have a larger "swept area" (ECF Doc. 1, page ID 5, Complaint ¶ 14) would be unavailing. Here, Plaintiffs have alleged that Defendant knew that the brakes were insufficient for the size of the vehicle, but they have not made the necessary corollary assertion that the manufacturers knew that the latent defect existed and therefore purposefully limited the warranty period so that the defect would most likely not occur until the warranty period expired. It would appear, that with the possible exception of Plaintiff Tatum, Count IV, breach of written warranty pursuant to 15 U.S.C. 2301, the Magnuson-Moss Warranty Act, will have to be amended or dismissed as the record develops. It also remains to be seen if a class of owners whose vehicles

7

failed, and were not repaired under warranty, within the applicable time or mileage period exists in sufficient numbers to satisfy 15 U.S.C. 2301. Plaintiff's allegations that the size of the brakes compared to the weight of the car cause the brake pads and rotors to wear out prematurely "after under 20,000 mile, rather than the 40,000 that which would normally be expected" begs the question of who might have had those expectations, and on what they were based. If, as Defendant suggests, they are nothing more than consumer expectations and not based on representations by Chrysler there is nothing actionable.

Defendant's third argument, that Plaintiffs interchangeably use the name "Dodge" when, in fact, they ought to have alleged "Chrysler LLC" is too clever by half. It is clear to the Court that Plaintiff does not intend to hold a trademark liable, but rather uses Dodge as a way of identifying the vehicles rather than the responsible party. The Court will follow the advice of the Supreme Court in *Ashcroft v. Iqbal*, 29 S. Ct. 1937, 1950 (U.S. 2009) that a Court should "draw on [its] judicial experience and common sense." Drawing on both, the Court declines to dismiss the complaint because Plaintiff has used Dodge and Chrysler interchangeably, as people often do in common parlance.

Defendant's fourth argument concerns affirmative representations. Defendant argues that the representations contained in Defendant's advertising of the Journey were not intended to be taken at face value, and did not create an express warranty as understood by the UCC as to the life of the Journey's braking system. In fact, Plaintiff acknowledges as much, stating in the Complaint that "these television spots are not meant to be taken literally." (ECF Doc. 1, page ID 5, Complaint ¶ 15). Nonetheless, Plaintiff argues that advertisements for the class vehicles "regaled" consumers with "the concept that the Journey is a reliable, durable car." (Id.) Defendant has the better of the

8

argument, and the Court agrees that Defendant's advertisements amounted to nothing more than non-actionable hyperbole or puffery.  Moreover, to the extent that any warranty of reliability and durability could be teased from the advertising, durability and reliability may be based on multiple factors, not just one element of the car, albeit a vitally important one. Absent specific claims as to the braking system, Defendant's general advertising was puffery as that is understood  in the law. The Court is persuaded by the reasoning of both *In re Toshiba America HD DVD Marketing and Sales Practices Litigation* 2009 WL 2940081,  (D.N.J.) (D.N.J.,2009) and *In re Ford Motor Co. E-350 Van Products Liability Litigation* (No. II) L 601279, 10 -11 (D.N.J.,2011) in which the Court found that statements that Ford's E350 van "is a very safe vehicle," and is "America's Most Trustworthy" constitute "classic examples of non-actionable opinion," under the UCC. In fact, case law is replete with opinions that differentiate puffery from claims that would form the basis of an express warranty, including  *Lithuanian Commerce Corp. Ltd. v. Sara Lee Hosiery,* 14 F. Supp. 2d 453, 459 (D.N.J. 2002), *Shapiro v. UJB Financial Corp.,* 964 F.2d 272 (3rd Cir. 1992), and  *U.S. v. Pearlstein,* 576 F.2d 531 (3rd Cir. 1978). See also *Avery v. State Farm Mat. Auto. Ins. Co.,* 835 N.E.2d 801, 847 (Ill. 2005) ("Describing a product as 'quality' or as having 'high performance criteria' are the types of subjective characterizations that Illinois courts have repeatedly held to be mere puffing *"); Mason v. Chrysler Corp.,* 653 So.2d 951, 953-54 (Ala. 1995) (holding that a national advertising campaign referring to a vehicle's quality engineering, reliability and smooth riding was puffing); *Cornish v. Friedman,* 126 S.W. 1079, 1083 (Ark. 1910) ("[M]ere words of praise and commendation or which merely express the vendor's opinion, belief, judgment, or estimate, do not constitute a warranty"). The Court therefore holds that Defendant's advertising amounts to non-actionable puffery, and is not sufficient to create an express warranty. Therefore,

Count V, breach of express warranty, is dismissed.

Defendant next argues that Plaintiff's fraud based claims are not pled with specificity as required by Fed. R. Civ. P. 9(b). Based on a case from our district that was recently decided on similar facts, the Court agrees. In *Alban v. BMW of North America* 2011 WL 900114, 10 (D.N.J.) (D.N.J.,2011), the Court directed Plaintiff to set forth "information as to when, before the time he purchased his vehicle, BMW learned of the defect, how it gained that knowledge, who at the company possessed such knowledge, and when or how the decision was made to conceal the defect from customers." The Court further directed him to sufficiently allege "(1) that all, or even substantially all, model E46 vehicles manufactured by BMW included defective insulation, (2) that the company knew that the insulation was certain to fail, and (3) limited the warranty agreement's duration in an effort to avoid the cost of repairs." In the case at bar, Plaintiff's have not even approached that level of specificity. As the Court in *Perkins v. DaimlerChrysler Corp.,* 890 A.2d 997, 1004 (N.J.Super.Ct.App.Div.2006) held, "in cases such as this one, where an allegedly-defective product was covered by a warranty, "[a] claim that a defect may*, but has not, manifested itself until after the expiration of the warranty period cannot form the basis of a claim under the [NJ]CFA. Rather, a plaintiff must sufficiently allege that the defendant manufacturer *knew with certainty* that the product at issue or one of its components was going to fail." (See *Maniscalco v. Bro. Int'l Corp.,* 627 F.Supp.2d 494, 501-02 (D.N.J.2009). Here, where the only allegation that Plaintiff makes with regard to Defendant's knowledge of the alleged defect is based on a comparison of the Dodge Journey with other vehicles, the Court finds that insufficient to meet the particularity requirements of Fed. R. Civ. P. 9(b). Although the Court recognizes that at this early stage, prior to discovery, facts in the sole possession of

10

Defendant are hard to come by, there is not enough here for the Court to even draw an inference that the braking systems were defective from the time of manufacture, and that Chrysler knew or should have known that fact. Thus, Count I based on the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 *et seq*,  must be dismissed. In addition, as the Northern District of California explained in *Newsom v. Countrywide Home Loans, Inc*. 714 F.Supp.2d 1000, 1010 (N.D.Cal.,2010), "the UCL makes actionable any 'unlawful, unfair or fraudulent business act or practice.' Cal. Bus. & Prof.Code § 17200... The heightened pleading requirements of Rule 9(b) are applicable to UCL claims. *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1125 (9th Cir.2009) ("we have specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL."). Therefore, Count III must also be dismissed. The Court declines to dismiss Count II, violation of the California Consumer Legal Remedies Act, and agrees with Plaintiff that Tatum would have standing if her claim occurred before the expiration of the sales warranty, as previously discussed. Although the Court has serious concerns about Plaintiff's ability to prove the necessary element of concealment or suppression of material facts concerning the braking system, especially in light of the Court's holding that the advertising of the Dodge Journey amounted to puffery, and not to material misrepresentation, the Court nonetheless views the Complaint in the light most favorable to Plaintiff, and so Count II will not be dismissed at this juncture.

IV.     **CONCLUSION**

For the reasons stated herein, Defendant's motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) is **granted** as to Counts I, III, V**,** and **denied** as to Counts II and IV. An appropriate Order accompanies this Opinion.

                                     S/ Dennis M. Cavanaugh
                                     DENNIS M. CAVANAUGH, U.S.D.J.

Date:   March   28 , 2011
cc:     Counsel of Record
        Hon. Joseph A. Dickson, U.S.M.J.

12